**Bajzel**
v.
**Air Tool Service Co.**
*[Cite as 4 AOA 263]*

*Case No. 57047*
*Cuyahoga County, (8th)*
*Decided June 7, 1990*

*Sheldon R. Jaffery, Attorney at Law, 33595 Bainbridge Road #201, Solon, Ohio 44139, for Plaintiff-Appellants.*

*Jeffrey Embleton, Attorney at Law, 2150 Illuminating Building, Cleveland, Ohio 44113-1994, for Defendant-Appellee.*

SWEENEY, J.

Plaintiff-appellants, William F. Bajzel, *et ux,* timely appeal from the trial court's granting of summary judgment to defendant-appellee, Air Tool Service Company, on the ground the complaint is barred by the statute of limitations as expressed in R.C. 2305.10. For the following reasons, we overrule as to Assignments of Error I and II and sustain Assignment of Error III.

According to the deposition testimony of William F. Bajzel, he began working at Air Tool Service Company ("Air Tool") in September of 1981 as a surface grinder. He was transferred to the position of electroplater in the summer of 1982. As an electroplater, Bajzel's duties involved sandblasting, lacquering pieces and placing them on a rack to be immersed in an electrically charged chromic acid solution.

Bajzel worked as an electroplater from the summer of 1982 until January of 1984. He worked in close proximity to two 900-gallon tanks containing a solution consisting of water, chromic and sulfuric acid. The tanks had bonnets on them designed to draw off most of the fumes emitted by the solution. When Bajzel started working as a plater, the bonnets worked effectively, but toward the end of 1982 they did not work as effectively, allowing fumes from the chromic solution to escape from the tanks directly into the air. Shortly after starting work as a plater, Bajzel read the warning labels on the chromic and sulfuric acid containers, and he knew they were dangerous. The labels warned that the product could cause burns or external ulcers and warned Bajzel to avoid breathing dust or mist from the solution. When he started working as a plater, Bajzel was informed that a co-worker reportedly had nasal problems from exposure to the acid.

Toward the end of 1982, Bajzel began to experience headaches and soreness around his eyes and nose and short nosebleeds. Bajzel knew the warning labels "said what was going wrong with me" because he was "not supposed to breathe that stuff in." In December of 1982, Bajzel asked and received a paper mask because he thought the fumes were irritating his nose. About two months later, appellant asked for and received a rubber "pulmosan" mask because the fumes were getting worse. Even with the rubber mask, the fumes got in his face and the nostril soreness and nosebleeds continued.

In 1983, Bajzel began to experience nosebleeds more frequently. The nosebleeds became severe during the later half of 1983, occurring six to seven times per day at work. The nosebleeds very rarely occurred at home.

In January of 1984, Bajzel visited his physician. Prior to this visit, Bajzel suspected that the chromic acid was part of his nosebleeding problem. The physician confirmed that the chromic acid was a possible cause of Bajzel's nosebleeding. To control the bleeding, Bajzel underwent nasal surgery.

On December 4, 1985, some twenty-three months after the physician's diagnosis, William F. Bajzel filed a complaint to recover for injuries to his nasal area and for his spouse's loss of consortium. Defendant-appellee, Air Tool, subsequently filed its motion for summary judgment, alleging that the Bajzels' causes of action were barred by the applicable statute of limitations. The trial court granted summary judgment in favor of all defendants on the ground that all the claims in the complaint were barred by the statute of limitations as expressed in R.C. 2305.10. This timely appeal follows.

"I. WHEN EXPOSURE TO A TOXIC SUBSTANCE DOES NOT IMMEDIATELY RESULT IN INJURY, A CAUSE OF ACTION IN AN INTENTIONAL TORT CASE FOR DAMAGES ARISING FROM THE EXPOSURE DOES NOT ACCRUE UNTIL ACTUAL INJURY OR DAMAGE HAS BEEN DIAGNOSED AND ITS CAUSE DISCOVERED.

"II. ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AS WELL AS THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION, MANDATE THAT OHIO REVISED CODE SEC. 2305.10 BE APPLIED AS A DISCOVERY STATUTE IN INTENTIONAL TORT CASES ARISING OUT OF EXPOSURE TO TOXIC SUBSTANCES."

Bajzel asserts the trial court erred in granting the motion for summary judgment because the discovery date of the injury was the date of diagnosis and, therefore, the claim was timely filed within two years as required under R.C. 2305.10. Bajzel also argues that R.C. 2305.10 deprives him of a reasonable amount of time within which to bring suit as guaranteed by the Ohio and United States Constitutions.

Civ. R. 56 provides that before summary judgment may be granted, it must be determined that:

"(1) no genuine issue as to any material fact remains to be litigated;

"(2) the moving party is entitled to judgment as a matter of law; and

"(3) it appears from the evidence that reasonable minds can come to but one conclusion and, viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Petrey* v. *Simon* (1984), 19 Ohio App. 3d 285."

The applicable statute of limitations to this action is R.C. 2305.10, which states:

"An action for bodily injury or injuring personal property *shall be brought within two years after the cause thereof arose.*

"For purposes of this section, *a cause of action for bodily injury caused by exposure* to asbestos or to *chromium in any of its chemical forms* arises upon the date of which the plaintiff is informed by competent medical authority that he has been injured by such exposure, *or upon the date of which,* by the exercise of reasonable diligence, *he should have become aware that he had been injured by the exposure, whichever date occurs first."* (Emphasis added).

The Supreme court in *O'Stricker* v. *Jim Walter Corp.* (1983), 4 Ohio St. 3d 84, applied the discovery rule of R.C. 2305.10 to a case involving exposure to chromium before the statute had been amended to include it. The court reasoned that:

"When an injury does not manifest itself immediately, the cause of action arises upon the date on which the plaintiff is informed by competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first." *See, Viock* v. *Stowe-Woodward Co.* (1983), 13 Ohio App. 3d 7. It follows that the mere filing of a complaint within the two years of diagnosis will not always satisfy the O'Stricker

test. *Salyer* v. *Cargill, Inc.* (Oct. 2, 1987), Montgomery App. No. 10450, unreported. Thus, R.C. 2305.10 and *O'Stricker* mandate that the date of diagnosis is not the appropriate date to begin the tolling of the statute of limitations if Bajzel should have become aware at an earlier date that he had been injured by the exposure to the fumes.

In the present case, the lower court determined that "reasonable minds here can come to one conclusion, and that conclusion is that Mr. Bajzel should have known even before he consulted his physician, that he had been injured by chromium and sulphur and that he should have taken legal action earlier than he did." The court held he is, therefore, barred by the statute of limitations expressed in R.C. 2305.10 from bringing suit against defendants. We agree with the lower court's conclusion.

The material facts adduced from the deposition testimony of William F. Bajzel are as follows:

"(1) Bajzel knew in the summer of 1982 that a co-worker reportedly had suffered nasal injuries from exposure to the chromium solution;

"(2) Bajzel read the warning labels and knew the chromium solution was dangerous;

"(3) Toward the end of 1982, Bajzel began to suffer headaches and soreness of the eyes and nose, and he thereby requested and received a mask;

"(4) Bajzel requested and received a pulmosan rubber mask two months later because the fumes got worse and the nostril soreness continued;

"(5) Bajzel suffered severe nosebleeds in 1983, primarily at work, at a rate of six to seven times a day; and

"(6) Bajzel admitted he knew prior to December 1983 that the fumes were bad and he believed they were irritating his nose." These facts lead us to find that reasonable minds can come to but one conclusion: "that William F. Bajzel, by the exercise of reasonable diligence, knew or should have known, prior to December 1983, that his injury was caused by exposure to the fumes from the chromium solution."

Bajzel's affidavit which states he did not realize there was a link between his nosebleeds and work before he consulted a physician does not create a genuine issue since his actions indicate he should have been aware of the connection.

Therefore, we conclude the trial court did not err in granting summary judgment in favor of appellee and against appellant William F. Bajzel on the ground he is barred by the statute of limitations as expressed in R.C. 2305.10 from bringing suit against appellee.

Bajzel's argument that the application of R.C. 2305.10 deprives the appellants of a reasonable amount of time within which to bring suit as guaranteed by the Ohio and United States Constitutions is without merit. The Supreme Court of Ohio has held that General Code Sec. 1124-1 (now R.C. 2305.10), the two-year period in which an action for bodily injury must be brought, is not an unreasonably short time and assures the preservation of evidence. *Andrianos* v. *Community Traction Co.* (1951), 155 Ohio St. 47. Thus, we find the statute of limitations as expressed in R.C. 2305.10 does not deprive Bajzel of a reasonable amount of time to bring suit and is a constitutionally permissive method of preserving evidence. *See, Wargetz* v. *Villa Santa Anna Home for the Aged* (1984), 11 Ohio St. 3d 15.

Accordingly, Assignments of Error I and II are overruled.

### III.
"A SPOUSE OF AN EMPLOYEE WHO IS INJURED AS THE RESULT OF THE INTENTIONAL TORTIOUS CONDUCT OF HIS EMPLOYER BEFORE AUGUST 22, 1986 MAY BRING AN ACTION AGAINST THE EMPLOYER FOR LOSS OF CONSORTIUM WITHIN FOUR (4) YEARS AFTER THE CAUSE OF ACTION ACCRUED.

Appellants argue the trial court erred in finding that William F. Bajzel's spouse's claim for loss of consortium is a derivative claim likewise barred by R.C. 2305.10. We agree with appellants.

The supreme court has held that a spouse's action for loss of consortium arising from bodily injuries suffered by the other spouse as the result of the tort of the third party is not barred by the two-year statute of limitations, but is governed by the four-year limitation period set forth in R.C. 2305.09 (D). *Viock* v. *Stowe-Woodward Co.* (1983), 13 Ohio App. 3d at 15; *Kraut* v. *The Cleveland R. Co.* (1936), 132 Ohio St. 125. Therefore, we conclude that the judgment denying recovery to the appellant/husband for failure to bring his action within the two-year limitation period does not constitute a bar on the appellant/wife's claim for loss of consortium. *Kraut, supra.*

We find no evidence in the record that the trial court reached the merits of whether the appellant/wife timely filed her claim and wheth-

er Bajzel's intentional tort claim can be proved. As an appellate court, we refrain from deciding these issues not yet considered by the trial court. *Village of Oakwood v. Clark Oil & Refining Corp.* (Feb. 27, 1986), Cuyahoga App. No. 50999, unreported.

Accordingly, Assignment of Error III is sustained.

Judgment affirmed as to Assignments of Error I and II and reversed and remanded for further proceedings as to appellants' sixth cause of action for loss of consortium.

*Judgment affirmed in part,*
*reversed in part, and*
*cause remanded.*

PATTON, C.J., and STILLMAN, J., concur.

Saul G. Stillman, retired Judge of the Eighth Appellate District, sitting by assignment.