**HICKLE, Admr., Appellant,**

v.

**MALONE et al., Appellees.**

[Cite as *Hickle v. Malone* (1996), 110 Ohio App.3d 703.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5-95-57.

Decided May 2, 1996.

*Rogers, Godbey & Horner Co., L.P.A.,* and *George C. Rogers,* for appellant.
*Jones & Bahret Co., L.P.A.,* and *Willis P. Jones,* for appellees.

---

SHAW, Judge.

This appeal, having been heretofore placed on the accelerated calendar, is being considered pursuant to App.R. 11.1(E) and Loc.R. 12. Pursuant to Loc.R. 12, we hereby elect to issue a full opinion in lieu of a judgment entry.

Plaintiff-appellant, Rosemary E. Hickle (hereinafter "plaintiff"), individually and as administrator of the estate of Larry Hickle, appeals from a judgment entered in the Hancock County Court of Common Pleas, dismissing her complaint for legal malpractice against defendants-appellees, Michael J. Malone and the law firm of Oxley, Malone, Fitzgerald & Hollister pursuant to Civ.R. 12(B)(6).

The record reveals that following the death of her husband due to a diving mishap in a swimming pool, plaintiff hired defendant Dennis Fitzgerald to investigate the possibility of filing a lawsuit against any parties responsible for the untimely death. On February 3, 1992, however, defendant Dennis Fitzgerald

sent a letter to plaintiff notifying her that he did not believe that a viable cause of action existed against the owners of the swimming pool in which the accident took place. Fitzgerald further advised plaintiff that the statute of limitations on any action would expire on June 3, 1993, and he urged her to seek the opinion of a different attorney as to whether or not a viable cause of action existed.

On March 3, 1993, defendant Michael J. Malone contacted George Rogers, who was the attorney plaintiff eventually retained to file her husband's wrongful death action. Defendant Malone advised Rogers that his law firm, defendant Oxley, Malone, Fitzgerald & Hollister, wished to represent the Fox Pool Corporation, which was a defendant in plaintiff's lawsuit. Defendant Malone further advised Rogers that there might be a potential conflict of interest in his representation of Fox Pool Corporation due to plaintiff's prior attorney-client relationship with defendant Fitzgerald, who was defendant Malone's law partner. However, defendant Malone also asked Rogers if he would waive any potential conflict of interest on behalf of his client, which Rogers declined to do. Additionally, Rogers advised defendant Malone that a default judgment had been entered against the Fox Pool Corporation. The record reveals that the trial court did enter a default judgment against the Fox Pool Corporation, due to its failure to enter an appearance or file an answer in response to plaintiff's complaint against it. The trial court then set a date for an evidentiary hearing on the issue of damages.

Apparently on this same date, defendant Malone filed a motion on behalf of the Fox Pool Corporation, seeking leave to plead or respond to plaintiff's complaint. It appears that the trial court granted Fox Pool's motion for leave to plead, thereby causing the cancellation of the previously scheduled evidentiary hearing on damages resulting from the default judgment. Fox Pool eventually settled plaintiff's lawsuit for $150,000.

On June 9, 1995, plaintiff filed a complaint in the trial court against the defendants herein, alleging legal malpractice. In particular, plaintiff maintains that defendants violated their attorney-client relationship with her by filing a motion for leave to plead on behalf of Fox Pool, after declining to take her case. Plaintiff further alleges that as a direct and proximate result of defendant's actions, Fox Pool was permitted to file a late answer to plaintiff's complaint, which in turn resulted in the default judgment against Fox Pool being vacated. Thus, plaintiff argues, the value of her personal injury claims were reduced from $500,000 to $150,000, based solely on defendants' actions.

On November 2, 1995, the trial court granted defendants' motion to dismiss pursuant to Civ.R. 12(B)(6), holding that plaintiff failed to file her legal malpractice action against defendants within the one-year statute of limitations pursuant to R.C. 2305.11(A).

Thereafter, plaintiff filed the instant appeal, asserting the following sole assignment of error:

"The trial court erred in dismissing plaintiff's legal malpractice complaint on the basis of the statute of limitations by determining that a 'discovery' of the malpractice on March 31, 1993 was the start of the statute rather than on February 14, 1995 with the 'delayed occurrence' of damages."

██ Plaintiff argues that the statute of limitations on her cause of action commenced on February 14, 1995, when the case was settled at an allegedly reduced value rather than the March 31, 1993 date on which the trial court canceled the default evidence and damages hearing.

██ In order for a trial court to dismiss a complaint pursuant to Civ.R. 12(B)(6), it must appear beyond doubt that the plaintiff can prove no set of facts in the complaint in support of the claim which would entitle him or her to relief. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 144, 573 N.E.2d 1063, 1064–1065. Affirmative defenses such as the expiration of the applicable statute of limitations are generally not properly raised in a Civ.R. 12(B)(6) motion unless the complaint conclusively shows on its face that the action is barred by the statute of limitations. *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 23 O.O.3d 346, 433 N.E.2d 147; *Steiner v. Steiner* (1993), 85 Ohio App.3d 513, 518–519, 620 N.E.2d 152, 156.

In addressing the statute of limitations applicable to a legal malpractice action, the Supreme Court of Ohio in *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus, held:

"Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. (*Omni–Food & Fashion, Inc. v. Smith* [1988], 38 Ohio St.3d 385, 528 N.E.2d 941, applied.)"

In the instant case, plaintiff filed a five-page, twenty-six-paragraph complaint, in which she alleged that defendants violated their attorney-client relationship with her by causing the default judgment hearing scheduled for March 31, 1993 to be canceled on that same date.

Pursuant to the termination rule set forth in *Zimmie*, plaintiff's complaint reveals that defendants ended their attorney-client relationship with plaintiff on February 3, 1992 by a letter that clearly indicated that defendant Fitzgerald

would not pursue plaintiff's action. Plaintiff does not argue that her attorney-client relationship with defendants terminated at a time other than February 3, 1992, and she clearly did not file her complaint alleging legal malpractice until June 9, 1995. Thus, it is obvious from the face of plaintiff's complaint that she did not file her action within one year of the termination of her attorney-client relationship with defendants.

■ Pursuant to the second prong of *Zimmie*, we must next determine when plaintiff's legal malpractice action accrued under the discovery rule whereby a "cognizable event" notifying the client of an injury is required. The term "cognizable event" has been defined as an event that is sufficient to alert a reasonable person that his attorney has committed an improper act in the course of legal representation. *Spencer v. McGill* (1993), 87 Ohio App.3d 267, 278, 622 N.E.2d 7, 15.

In the case *sub judice*, plaintiff's complaint reveals that on March 3, 1993, plaintiff had knowledge that defendant Malone wished to represent the Fox Pool Corporation and had filed a motion for leave to file a late answer on behalf of Fox Pool. It is this action on the part of defendants that plaintiff contends resulted in the trial court's vacating its March 31, 1993 default judgment hearing on March 31, 1993. Plaintiff argues, however, that her action did not accrue until February 14, 1995, which was the date on which she settled her personal injury claim for $150,000 and suffered actual and appreciable damage from defendants' malpractice.

As previously noted, plaintiff filed her complaint in the instant case on June 9, 1995. In reviewing plaintiff's complaint in its entirety, it is our conclusion that the "cognizable events" which alerted or should have alerted plaintiff that her attorney may have committed a wrongful act occurred on either March 3, 1993, when plaintiff received notice that defendant Malone wished to represent Fox Pools, or on March 31, 1993, when the trial court vacated the default hearing. Plaintiff's complaint itself alleges that defendants knowingly and willfully filed a motion for leave to file an answer on behalf of Fox Pools "knowing that such a motion would cause substantial harm to its former client." In either case, it is clear from the face of the complaint that plaintiff did not file suit within one year of either March 3 or March 31, 1993.

Accordingly, based on the foregoing facts and authorities, we hold that the trial court properly dismissed plaintiff's complaint pursuant to Civ.R. 12(B)(6), as plaintiff's action was time-barred by R.C. 2305.11(A). Plaintiff's assignment of error is overruled, and the judgment of the Hancock County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

HADLEY, P.J., concurs.

EVANS, J., concurs separately.

EVANS, Judge, concurring separately.

Although I agree completely with the majority in this case, I write separately because I do not think that the complaint filed in this case sets forth a claim of attorney malpractice.

The Supreme Court of Ohio identified the requirements to establish a cause of action for legal malpractice relating to civil matters in *Krahn v. Kinney* (1989), 43 Ohio St.3d 103, 538 N.E.2d 1058. The first requirement is an attorney-client relationship giving rise to a duty. However, in the case *sub judice*, the acts by the defendants about which the appellant complains occurred on March 3, 1993, yet the attorney-client relationship between the parties was terminated on February 3, 1992. On these facts I can find no relationship in existence in March 3, 1993, that gave rise to any duty owed by appellees to appellant. Even if appellant's theory is that there were confidential disclosures made to appellees during the existence of the attorney-client relationship that enabled appellees to set aside appellant's default judgment, there is no allegation of that nature in the complaint. Furthermore, it was the trial judge who vacated the default judgment in the case, not the appellees, even though the complaint places the responsibility for that vacation on the appellees. Finally, the appellant's claim of damages is based on sheer speculation. It is assumed that the trial court would have awarded $500,000 in damages at the default hearing, but one is left to wonder why the appellant would settle her claim for $150,000 if she could demonstrate damages of $500,000 at a hearing to fix damages after taking a default judgment.

I conclude that the trial court was correct in granting the motion to dismiss on the basis of the statute of limitations but could also have dismissed because the complaint failed to state a cause of action.